# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **REGINALD C. GENTRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-778** |
| | ) | **Judge Trauger** |
| **ANDREW SAUL,** | ) | **Magistrate Judge Frensley** |
| **COMMISSIONER OF SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 11. Plaintiff has filed an accompanying Memorandum. Docket No. 11-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 12.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on April 11,

2018,[1] alleging that he had been disabled since March 29, 2018,[2] due to "Generalized Anxiety Disorder (Depression);" "Bilateral pes planus (Flat Feet);" "Diabetes;" "Gout;" and "Sleep Apnea." *See, e.g.,* Docket No. 7, Attachment ("TR"), pp. 226, 254. Plaintiff's application was denied both initially (TR 119) and upon reconsideration (TR 135). Plaintiff subsequently requested (TR 163) and received (TR 16-47) a hearing. Plaintiff's hearing was conducted on November 26, 2018, by Administrative Law Judge ("ALJ") Marty S. Turner. TR 16. Plaintiff and vocational expert ("VE"), Stephen B. Schnacke, appeared and testified. *Id.*

On February 13, 2019, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 71. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 29, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment [*sic*]: gout and depressive disorder/anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the

---

[1] Plaintiff previously filed an application for Disability Insurance Benefits ("DIB") on February 23, 2015. TR 104. This application was denied initially and upon reconsideration, and Plaintiff appeared and testified at two separate hearings on the matter. TR 104. On March 28, 2018, Plaintiff received an unfavorable disability determination (TR 101-114), which was not appealed (TR 74). Instead, Plaintiff filed the instant application. TR 74.

[2] Plaintiff originally claimed an onset date of May 23, 2017, which was amended on the record at Plaintiff's hearing before the ALJ. TR 20.

2

undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c), except that the claimant is limited to occasional interactions with [*sic*] general public, co-workers and supervisors and occasional changes in the work setting.

6.    The claimant is unable to perform past relevant work as a recruiter. (20 CFR 404.1565).

7.    The claimant was born on July 12, 1969 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 29, 2018, through the date of this decision (20 CFR 404.1520(f)).

TR 77, 79-80, 84-85.

On March 29, 2019, Plaintiff timely filed a request for review of the hearing decision. TR 223. On July 5, 2019, the Appeals Council issued a letter declining to review the case (TR 5-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's

conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980). In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

"listed" impairments or its equivalent.[3] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779

---

[3] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

(6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ failed to properly evaluate: (1) the medical opinion evidence presented; (2) the disability determination Plaintiff obtained from the Veterans Administration ("VA"); (3) Plaintiff's testimony regarding his limitations; (4) whether Plaintiff met the criteria of listings 12.04 and 12.06; (5) the combined effects of Plaintiff's nonexertional limitations; and (6) the Vocational Expert's testimony.[4] Docket No. 11-1, pp. 4-17. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse

---

[4] Plaintiff also contends that the ALJ erred when he found that Plaintiff had no severe impairments that had lasted or were expected to last for more than twelve months. Docket No. 11-1, p. 13. However, this statement is incorrect because the ALJ found that Plaintiff had severe impairments resulting from gout and depressive disorder/anxiety disorder. TR 77.

the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

1. Medical Opinion Evidence

Plaintiff maintains that the ALJ improperly discounted the medical opinion evidence presented. Docket No. 11-1, p. 11. First, Plaintiff contends that the ALJ improperly discounted the medical opinion evidence provided by Plaintiff's treating professional, Karen Gilbert. *Id.* Plaintiff contends that Ms. Gilbert's opinion statements should have been given greater weight under the treating physician rule because Ms. Gilbert treated Plaintiff for nine months. *Id.* Plaintiff further argues that Ms. Gilbert's statements are consistent with the majority of Plaintiff's treatment record at the Veterans Affairs Medical Center ("VAMC"). *Id.* Finally, Plaintiff avers that the ALJ erred by giving greater credence to evidence provided by Dr. Karla McQuain, who performed Plaintiff's consultative exam, than to the evidence provided by Ms. Gilbert. *Id.*

Defendant responds that the ALJ properly considered the medical opinions in compliance with the regulations promulgated prior to the date Plaintiff's application was filed. Docket No. 12, pp. 6-7. Defendant contends firstly that, because of the new regulations promulgated on March 27, 2017, the treating physician rule no longer applies. *Id.* at 10. Secondly, Defendant avers that, as a licensed clinical social worker, Ms. Gilbert would not have been entitled to the deference afforded a treating physician even under prior regulations. *Id.* Defendant contends that Ms. Gilbert's statement did not qualify as an opinion because she merely completed a form recording Plaintiff's subjective limitations. *Id.* Defendant further argues that the limitations in Ms. Gilbert's form were inconsistent with the objective medical evidence and neither well supported nor explained. *Id.* at

10-11. Finally, Defendant avers that the ALJ properly gave greater credence to Dr. McQuain's opinion because her findings were consistent with the record, well-supported, and well-explained. *Id.* at 9.

On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules revised the policies for claims filed on or after March 27, 2017 and set forth the rules for evaluating opinion evidence (both medical and nonmedical). 20 C.F.R. §§ 404.1527, 416.927. *See* "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions -- rules.html. Plaintiff filed his application after March 27, 2017. TR 226. As such, Plaintiff's case is governed by the rules that were implemented on March 27, 2017. *See* 20 C.F.R. § 404.614 (generally, an application for benefits is deemed filed on the day it is received by an SSA employee). The new regulations provide as follows:

> **(a) How we consider medical opinions and prior administrative medical findings.** We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). . . .
>
> **(b) How we articulate our consideration of medical opinions and prior administrative medical findings.** We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your

case record. Our articulation requirements are as follows:

**(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

**(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

**(c) Factors.** We will consider the following factors when we

consider the medical opinion(s) and prior administrative medical finding(s) in your case:

**(1) Supportability.** The more relevant the objective medical evidence and explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(2) Consistency.** The more consistent a medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

**(3) Relationship with the claimant.** This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

> **(i) Length of the treatment relationship.** The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

> **(ii) Frequency of examinations.** The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

> **(iii) Purpose of the treatment relationship.** The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

> **(iv) Extent of the treatment relationship.** The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

> **(v) Examining relationship.** A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

11

**(4) Specialization.** The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

**(5) Other factors.** We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

**(d) Evidence from nonmedical sources.** We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.

20 C.F.R. § 404.1520c (emphasis added).

Ms. Gilbert began treating Plaintiff in September of 2017. TR 1367. On June 29, 2018, Ms. Gilbert provided a mental residual functional capacity assessment regarding Plaintiff, which stated that Plaintiff had generalized anxiety disorder and indicated that Plaintiff had undergone "[i]ndividual [c]ognitive [b]ehavioral therapy for anxiety; group therapy for [a]nger [m]gmt., [*sic*] pharmacological therapy." TR 1367, 1370. Ms. Gilbert noted that the assessment form, which asked about Plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation, was filled out "[a]ccording to patient [*sic*] report." TR 1368. Regarding Plaintiff's ability to work on a regular and sustained basis, Ms. Gilbert noted that, "I am not an expert forensic provider; therefore [I] cannot provide an opinion on his ability to work on a regular,

sustained basis. According to patient's report, he sought treatment for his anxiety after experiencing continued problems on the job which appear related to his anxiety." TR 1370.

Discussing Ms. Gilbert's letter, the ALJ stated:

> The assessment of Karen Gilbert, LCSW, is found to be not persuasive. In fact, it does not appear to be an opinion from Ms. Gilbert as she notes that she is "not an expert forensic provider; therefore [sic] cannot provide an opinion on his ability to work on a regular, sustained basis." She further notes that she completed the form according to the patient's report. To the extent it can be deemed an opinion, of Ms. Gilbert, [sic] it offers little. Ms. Gilbert noted that the claimant had been diagnosed with generalized anxiety disorder, began treatment on October 6, 2017, and attended treatment every two weeks. She reported that the claimant had undergone individual cognitive behavioral therapy for anxiety, group therapy for anger management, and pharmacological therapy. She reported that the claimant began treatment in September of 2017 and noted that claimant reported that he had had anxiety "a long time." While Ms. Gilbert noted multiple limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation, she stated that none of these limitations were her opinion and were only the claimant's subjective report. The social worker affirmatively refused to offer a specific opinion on the claimant's ability to work on a regular, sustained basis (See Ex. B5F). Ms. Gilbert is the claimant's therapist. However, her assessment is not consistent with the evidence of record, which, as above, shows observations that were within normal limits, with, at most, a mildly anxious mood with congruent affect (See, e.g., Ex. B3F, B4F, B7F, and B8F). Her assessment is not well supported or explained and consists generally of the claimant's own subjective reports. Ms. Gilbert admitted to being unable to offer a specific opinion on the claimant's ability to work on a regular, sustained basis, instead relying on the claimant's own reports and noting as much in the assessment (See Ex. B5F).

TR 82.

As the ALJ notes and the new regulation states, the ALJ will not defer or give any specific evidentiary weight to any medical opinion, even a treating source. 20 CFR § 404.1520c(a); TR 82. In discounting Ms. Gilbert's opinion, the ALJ discussed the relevant factors, set forth above. *See* 20 CFR § 404.1520c(c)(1) – (c)(5). Specifically, the ALJ found that Ms. Gilbert's opinion was not

13

supported by his treatment records or the objective medical evidence and was inconsistent with Plaintiff's VAMC and Podiatry Clinic medical records, which showed, at most, that Plaintiff had a mildly anxious mood with congruent affect. *See* TR 82.

Beyond discussing supportability and consistency, the ALJ also considered Ms. Gilbert's relationship with the claimant, noting that "Ms. Gilbert is the claimant's therapist." *See* 20 CFR § 404.1520c(c)(3); TR 82. The ALJ also recounted the extent and purpose of the treating relationship, noting that Plaintiff began treatment in 2017 and attended treatment every two weeks. TR 82. As the above discussion shows, the ALJ fulfilled his duty under the new regulations and properly evaluated the opinion of Ms. Gilbert.

Further, the ALJ properly explained his reasoning for finding Dr. McQuain's opinion more persuasive. Discussing Dr. McQuain's opinion, the ALJ stated:

> The opinions of Dr. Karla McQuain are consistent with treatment records and are persuasive. In her narrative report, Dr. McQuain opined that claimant showed no impairment in his ability to sustain concentration and no impairment in his short, long-term or remote memory functioning. She noted that claimant showed moderate evidence of impairment in social relating and moderate impairment in his ability to adapt to change. Dr. McQuain also completed [a] medical source statement. In that report, she opined that claimant has no limitations in the ability to understand, remember and carry out instructions. She further opined that claimant has moderate limitations in interacting appropriately with public, supervisors and co-workers and moderate limitations in responding appropriately to usual work situations and to changes in routine work setting. For purposes of her opinion, moderate is defined as "functioning in this area independently, appropriately, effectively and on a sustained basis is fair." [*sic*] Such opinion is consistent with her examination and claimant's treatment records. This opinion is well-supported and explained.

TR 82-83. As evidenced above, the ALJ discussed the supportability and consistency of Dr. McQuain's opinion. This was all that he was required to do under the regulations governing this case. *See* 20 CFR § 404.1520c.

Because the ALJ properly evaluated and discussed the medical evidence presented in this case, Plaintiff's argument on this point fails.

2. VA Disability Determination

Plaintiff contends that the ALJ improperly discounted the VA's disability determination and further failed to adequately explain his reasons for doing so. Docket 11-1, p. 9. Plaintiff maintains that, per the Sixth Circuit's decision in *LaRiccia v. Comm'r of Soc. Sec.,* the ALJ was required to explain the consideration given a disability determination by another agency. *Id.* at 6, *citing* 549 F. App'x 377, 388 (6th Cir. 2013) (internal citations omitted). Plaintiff further avers that the VA's disability rating should have been given more consideration because of the similarities between the disability parameters of the VA and the SSA. *Id.* at 7.

Defendant maintains that the ALJ properly determined that no analysis as to this evidence was warranted under the regulations applicable to Plaintiff's claim. Docket 12, p. 12. Defendant points to revised regulation 20 C.F.R. § 404.1520b(c)(1)-(3), which does not require an ALJ to provide an analysis explaining his consideration of evidence deemed neither inherently valuable nor persuasive to the issue of whether a claimant is disabled. *Id.* at 11. Defendant maintains that the ALJ's consideration of the VA determination is thus consistent with the agency's regulations. *Id.* at 12.

As discussed above, the final rules promulgated by the agency on January 18, 2017 (and amended on March 27, 2017) revised the policies for claims filed after March 27, 2017. *See* 82 Fed. Reg. 5844; 82 Fed. Reg. 15132; "Revisions to Rule Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html. These revised rules apply to Plaintiff's claim. *See* TR 226. The new regulations provide the following, with regard to the consideration of evidence:

(c) **Evidence that is inherently neither valuable nor persuasive.** Paragraphs (c)(1) through (c)(3) apply in claims filed (see § 404.614) on or after March 27, 2017. Because the evidence listed in paragraphs (c)(1) through (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c:

> (1) **Decisions by other governmental agencies and nongovernmental entities**. See § 404.1504.
>
> . . .

20 C.F.R. § 404.1520b (emphasis added).

Regulation § 404.1504 further clarifies that:

> Other governmental agencies and nongovernmental entities—such as the **Department of Veterans Affairs**, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers— make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, **we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled**, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (emphasis added).

The ALJ, in the instant action, found the VA disability determination to be neither inherently valuable nor persuasive. TR 84. Specifically, the ALJ stated that:

> In addition and noted, the claimant appears to have prior decisions from the Department of Veterans Affairs regarding disability those regulations [*sic*] (See, e.g., Ex. B2F, B3F, B4F, and B7F). However,

> this evidence is neither valuable nor inherently persuasive (See 20
> CFR 404.1520b(c)). As such, no analysis as to the evidence is
> warranted. . . .

TR 84.

As the above discussion shows, the ALJ was not required to provide any analysis about how he considered the VA disability determination, which he found to be neither inherently valuable nor persuasive. Thus, Plaintiff's argument on this count fails.

3. Plaintiff's Testimony

Plaintiff avers that the ALJ improperly discounted his testimony regarding the extent of his mental impairments. Docket No. 11-1, p. 10. Plaintiff maintains that the overwhelming evidence, including Plaintiff's treatment notes from the VAMC, supports his testimony that his severe anxiety and panic attacks limit his ability to maintain concentration in a work setting. *Id.* at 10, 14.

Defendant avers that the ALJ properly discounted Plaintiff's testimony regarding his limitations because the ALJ found Plaintiff's allegations inconsistent with the other evidence in the record. Docket No. 12, p. 12. Defendant contends that Plaintiff's allegations of a disabling mental impairment were inconsistent with treatment records stating that Plaintiff appeared alert, oriented, pleasant, friendly, and cooperative and demonstrated good eye contact, normal speech, appropriate memory, appropriate concentration, and coherent, logical, goal-directed thought processes. *Id.* Defendant further argues that, according to treatment records, Plaintiff reported reduced panic attacks after his medications were adjusted in July of 2018. *Id.* at 12.

The ALJ may consider a plaintiff's subjective allegations regarding his limitations in determining the plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(3). In analyzing the plaintiff's subjective complaints, the ALJ must consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration,

frequency, and intensity of claimant's pain or other symptoms; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. 20 CFR § 404.1529(c)(3). The ALJ is, however, entitled to weigh the objective medical evidence against a plaintiff's subjective claims of pain to reach a credibility determination. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *Walters,* 127 F.3d at 531 (citations omitted). *See also Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 248 (6th Cir. 2007) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."); *Moon,* 923 F.2d at 1182-83 ("though Moon alleges fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). When the ALJ rejects a claimant's testimony as not credible, the ALJ must clearly state the reasons for discounting the testimony, and the reasons must be supported by the record. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994); SSR 96-7P. An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987).

Here, the ALJ ultimately found that, while Plaintiff's mental impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity,

persistence, and limiting effects of these symptoms were not entirely consistent with the evidence in the record. TR 82. Discussing Plaintiff's subjective claims as to his mental impairments, the ALJ noted that Plaintiff "reports some difficulties in social settings" and "alleges some past issues with anger in social interactions and avoidance of interactions." TR 79. The ALJ further noted that, "At the hearing, claimant alleged difficulty with anger and issues with anxiety in social settings." TR 81.

However, the ALJ ultimately did not find Plaintiff's testimony about his mental impairments to be consistent with the evidence in the record. TR 81. Discussing Plaintiff's mental and social limitations, the ALJ stated:

> In understanding, remembering, or applying information, the claimant has no limitations. As noted below, records and examinations routinely note normal findings with regards to memory and cognitive abilities. In interacting with others, the claimant has a moderate limitation. Claimant reports some difficulties in social settings. Such is further detailed in the discussion below. With regard to concentrating, persisting, or maintaining pace, the claimant has a [*sic*] no limitation. Examinations routinely note normal findings with regards to concentration, persistence and pace. As for adapting or managing oneself, the claimant has experienced a moderate limitation. Claimant alleges some past issues with anger in social interactions and avoidance of interactions.

TR 79.

The ALJ also noted that:

> The medical evidence shows some history of generalized anxiety disorder and depressive disorder. The Veterans Administration designated "generalized anxiety disorder," while the consultative examiner noted "unspecified depressive disorder with mixed anxiety and depression." Regardless of the designation, mental status examinations throughout 2018 have regularly shown observations that were within normal limits, with, at most, a mildly anxious mood with congruent affect (See, e.g., Ex. B3F, B4F, B7F, and B8F). Overall, the evidence shows mostly mild and intermittent symptoms.

19

At the hearing, claimant alleged difficulty with anger and issues with anxiety in social settings. Post-hearing, the undersigned requested that claimant attend a consultative examination. At this examination, claimant was seen by Karla McQuain, Ph.D. After evaluating the claimant, Dr. McQuain's diagnostic impression was unspecified depressive disorder with mixed anxiety and depression. She noted that claimant appeared to fall in the average range of intellectual functioning and showed no evidence of short-term memory impairment. She noted no evidence of impairment in his ability to sustain concentration and no evidence of impairment in his long-term and remote memory functioning. She noted that his current state was despondent. He showed moderate evidence of impairment in social relating and moderate impairment in his ability to adapt to change. (Ex. B10F)

TR 81.

The above evidence demonstrates that the ALJ properly compared Plaintiff's subjective complaints with the objective and opinion evidence in the record, ultimately finding Plaintiff's complaints to be inconsistent with the evidence in the record. As the issue of Plaintiff's disability prior to March 29, 2018 is *res judicata*, the ALJ in the case at bar was only required to consider the time period from the amended alleged onset date of March 29, 2018 forward. *See* 20 C.F.R. § 404.957; TR 74. While Plaintiff cites to various pages of objective medical evidence in the record that he contends demonstrate the severity of his mental impairments, most of the cited records predate the alleged disability onset date. *See* TR 433, 448, 485, 487, 490, 533, 598, 607.[5] Cited pages from the relevant time period further fail to support Plaintiff's assertion, as the records cited note that Plaintiff was "engaged," "alert," "oriented" and "euthymic" when reporting to group therapy sessions in April of 2018. TR 474, 478. Furthermore, VAMC treatment notes from July of 2018 note that Plaintiff reported that his medication had "helped with decreasing anxiety" and that

---

[5] Plaintiff cites TR 429, 444, 470, 474, 481, 483, and 486 in his brief. Docket No. 11-1, pp. 8-10. However, the Court has updated the page numbers to reflect the court numbering system.

he had experienced a "deduction [*sic*] in panic attacks." Docket No. 11-1, p. 10; TR 1390, 1392.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence, and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 4. Meeting a Listing

Plaintiff contends that the ALJ erred in determining that Plaintiff did not meet the criteria for any of the listed impairments. Docket No. 11-1, p. 7. Specifically, Plaintiff maintains that the evidence in his VAMC records demonstrate that he meets the listing criteria for listings 12.04 or 12.06. *Id.* at 8.

Defendant responds that the ALJ's finding that Plaintiff did not meet the listing criteria for either listing 12.04 or 12.06 was consistent with the opinions of the state agency medical consultants and Dr. McQuain. Docket No. 12, p. 10. Defendant further asserts that the medical records show that Plaintiff appeared alert, oriented, pleasant, friendly, and cooperative with good eye contact, normal speech, appropriate memory and concentration, and coherent, logical and goal-directed thought processes. *Id.* at 11.

The Code of Federal Regulations states that, to meet the listing requirements of listings 12.04 or 12.06, "your mental disorder must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." 20 CFR § 404, Subpt. P, App. 1.

With regard to Listing 12.04, "depressive, bipolar and related disorders," the Code of Federal Regulations states the criteria as follows:

    A.  Medical documentation of the requirements of paragraph 1 or 2:

        1.  Depressive disorder, characterized by five or more of the following:

            a.  Depressed mood;

      b. Diminished interest in almost all activities;
      c. Appetite disturbance with change in weight;
      d. Sleep disturbance;
      e. Observable psychomotor agitation or retardation;
      f. Decreased energy;
      g. Feelings of guilt or worthlessness;
      h. Difficulty concentrating or thinking; or
      i. Thoughts of death or suicide.

2. Bipolar disorder, characterized by three or more of the following:

      a. Pressured speech;
      b. Flight of ideas;
      c. Inflated self-esteem;
      d. Decreased need for sleep;
      e. Distractibility;
      f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
      g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are

not already part of your daily life (see 12.00G2c).

20 CFR § 404, Subpt. P, App. 1, Listing 12.04.

With regard to Listing 12.06, "anxiety and obsessive-compulsive disorders," the Code of

Federal Regulations states the criteria as follows:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

    1. Anxiety disorder, characterized by three or more of the following:

        a. Restlessness;
        b. Easily fatigued;
        c. Difficulty concentrating;
        d. Irritability;
        e. Muscle tension; or
        f. Sleep disturbance.

    2. Panic disorder or agoraphobia, characterized by one or both:

        a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
        b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

    3. Obsessive-compulsive disorder, characterized by one or both:

        a. Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
        b. Repetitive behaviors aimed at reducing anxiety.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 CFR § 404, Subpt. P, App. 1, Listing 12.06.

As discussed in the previous statement of error, the ALJ evaluated the objective and medical opinion evidence in the record in determining the extent of Plaintiff's mental impairments. *See* TR 79, 81. The ALJ did find that Plaintiff had a severe impairment due to his "depressive disorder/anxiety disorder," and he properly evaluated the record as a whole in determining that this impairment did not meet or medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). While Plaintiff contends that the evidence supports a different conclusion than the ALJ ultimately made, the decision of the ALJ must stand if substantial evidence supports the conclusion reached, even if the evidence could also support a different conclusion. *Her*, 203 F.3d at 389, *citing Key*, 109 F.3d at 273.

Because the ALJ properly evaluated the evidence of record and substantial evidence supports the ALJ's determination that Plaintiff does not meet or medically equal a listing, the ALJ's decision must stand.

5. Combined Effects of All Impairments

Plaintiff maintains that the ALJ did not sufficiently consider the combined effects of Plaintiff's non-exertional limitations in determining his RFC. Docket 11-1, p. 10. Specifically, Plaintiff contends that the ALJ "failed to address significant aspects of his severe anxiety and depression and how these factors combine with his physical impairments to produce a resulting eligibility for disability benefits." *Id.* at 4. Defendant responds that the ALJ properly considered the combined effects of all of Plaintiff's supported limitations in determining his RFC. Docket No. 12, p. 14.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). In determining a claimant's RFC, "the regulations require consideration of the physical, mental, and sensory requirements of work." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 223 (6th Cir. 2019), *citing* 20 C.F.R. § 404.1545(a)(4). With regard to the evaluation of mental abilities in determining a claimant's RFC, the Regulations state:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 CFR § 404.1545(c).

Plaintiff correctly asserts that the ALJ must evaluate the combined effect of his impairments in determining his RFC. 42 U.S.C. § 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ did not do so. *See* Docket No. 11-1, p. 10. In the case at bar, the ALJ determined that Plaintiff retained the RFC for performing the full range of medium work as defined in 20 CFR 404.1567(c), except that he is limited to occasional interactions with the general public, coworkers,

and supervisors, and occasional changes in the work setting. TR 80. Rather than "fail[ing] to address significant aspects of [Plaintiff's] severe anxiety and depression," as Plaintiff claims, the discussion in the above statements of error demonstrates that the ALJ did evaluate all objective and medical opinion evidence relevant to Plaintiff's alleged mental impairments. Docket No. 11-1, p. 10; TR 79, 81-82.

Because the ALJ's decision specifically addresses, in detail, the medical evidence, Plaintiff's testimony, and his subjective claims, it is clear that these factors were considered in the ALJ's ultimate RFC determination. TR 79, 81-82. As such, the ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.

6.  Hypothetical Questions and Reliance on the VE's Testimony Related Thereto

Plaintiff argues that that the ALJ's hypotheticals do not provide a detailed consideration of Plaintiff's non-exertional limitations. Docket No. 11-1, pp. 14-15. Specifically, Plaintiff argues that, in his hypotheticals, the ALJ did not give sufficient consideration to non-exertional limits "such as the Plaintiff's persistent anxiety" or to how such limits prevent Plaintiff from performing essential work-related activities. *Id.* at 4, 14. Further, Plaintiff contends that the ALJ failed to properly explain his reasoning for disregarding the VE's testimony that a person with limitations such as those presented in the second hypothetical would be essentially unemployable. *Id.* at 17, 19. Plaintiff avers that this second hypothetical is "particularly noteworthy [*sic*] as it anticipates and explores limits that would be in place if the Plaintiff experienced the panic attacks as he describes them, both in severity and frequency." *Id.* at 16.

Defendant responds that the ALJ properly incorporated in the hypothetical questions all the impairments and limitations he found supported by the record. Docket No. 14, p. 14. Defendant avers that, while the hypothetical question must set forth Plaintiff's impairments with reasonable

26

precision, "it need only include those impairments and limitations found supported by the record." *Id.*, *citing Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014).

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 CFR §§ 404.1520, 416.920. *See also Moon*, 923 F.2d at 1181. The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations, or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk*, 667 F.2d at 531. In other words, the ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's hearing, the ALJ posed several hypothetical questions to the VE. TR 42-45. The ALJ first queried:

> Q     For hypothetical #1, I want you to assume a hypothetical person who could perform a medium level of work, however, the individual is limited to understanding, remembering, and carrying out simple work instructions with occasional changes in the work setting and occasional interactions with the general public, coworkers and

supervisors. Given that restriction, those restrictions, would this hypothetical person be able to perform Claimant's past work?

TR 43.

The VE testified that such a person could not perform Plaintiff's past relevant work but could perform the work of a conveyor tender, auto detailer, gate guard or order filler. TR 43-44. The ALJ then modified the hypothetical and queried:

> Q    And if the hypothetical person were to require unscheduled breaks that would vary from day-to-day [*sic*]. Some days they may not need unscheduled breaks and other days they may need multiple unscheduled breaks, to the point where the individual would be off-task, let's say 20% of the workday [*sic*] in addition to the regularly scheduled breaks. Would that affect your opinion?

TR 44. The VE testified that such a person would be precluded from gainful employment. *Id.* Finally, the ALJ queried, "If the hypothetical person were to miss, on average, two days of work per month, would that affect your opinion?" *Id.* The VE testified that such a person would not be able to maintain employment on a regular basis. *Id*

As can be seen, the ALJ posed several hypothetical questions to the VE, each incorporating different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 42-44. While the ALJ did incorporate the additional limitation of regular unscheduled breaks into the second hypothetical, he did not ultimately find that Plaintiff's impairments necessitated such limitations. *See* TR 80-85. The ALJ thus chose to rely on the first hypothetical question, which presented limitations he found consistent with Plaintiff's abilities, as demonstrated by the record. TR 42-44; 84-85. Because the hypothetical question upon which the ALJ ultimately rendered his decision accurately represented Plaintiff's credible limitations, the ALJ properly relied on the VE's answer to that hypothetical question to prove the existence of a

significant number of jobs in the national economy that Plaintiff could perform. *See Felisky*, 35 F.3d at 1036; *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 11) be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**